## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                              |     |                          |
| ---------------------------- | --- | ------------------------ |
|                              | :   |                          |
| **UNITED STATES OF AMERICA** | :   | **Case No.: 23-cr-351 TNM** |
|                              | :   |                          |
| **v.**                       | :   |                          |
|                              | :   |                          |
| **RYAN WILSON,**             | :   |                          |
|                              | :   |                          |
| **Defendant.**               | :   |                          |
|                              | :   |                          |

### GOVERNMENT'S TRIAL BRIEF

The United States of America respectfully submits this trial brief in advance of trial before this Court in this case. The brief is divided below into a summary of the charges and elements (including relevant stipulations); a summary of the anticipated government witness testimony; expected duration of direct examination of each witness; and a discussion of certain legal issues anticipated to arise.

### Charges and Elements

Wilson is charged in an eight-count indictment alleging three felony offenses and five misdemeanor offenses. The gravamen of the felony counts derives from Wilson's actions at the Lower West Tunnel beginning at approximately 2:56 p.m. on January 6, 2021. The parties agreed to the elements below as part of their stipulated facts which is attached to this brief.

### I.      Count One: Civil Disorder

The parties agree that Obstructing Officers During a Civil Disorder, 18 U.S.C. § 231(a)(3), requires the following elements:

      a.   First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

    b.   Second, at the time of the defendant's actual or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

    c.   Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

## II.    Count Two: Assaulting, Resisting, or Impeding Officers

The parties agree that Assaulting, Resisting, or Impeding Officers, 18 U.S.C. § 111(a), requires the following elements:

    a.   First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer C.W., an officer from the Metropolitan Police Department.

    b.   Second, the defendant did such acts forcibly.

    c.   Third, the defendant did such acts voluntarily and intentionally.

    d.   Fourth, Officer C.W. was assisting officers of the United States who were then engaged in the performance of their official duties.

    e.   Fifth, the defendant made physical contact with Officer C.W. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count One, 18 U.S.C. § 231(a)(3), Civil Disorder.

## III.    Count Three: Assaulting, Resisting, or Impeding Officers Using a Dangerous Weapon

The parties agree that Assaulting, Resisting, or Impeding Officers Using a Dangerous Weapon, 18 U.S.C. § 111(a) and (b), requires the following elements:

a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer C.W., an officer from the Metropolitan Police Department.

b.  Second, the defendant did such acts forcibly.

c.  Third, the defendant did such acts voluntarily and intentionally.

d.  Fourth, Officer C.W. was assisting officers of the United States who were then engaged in the performance of their official duties.

e.  Fifth, the defendant made physical contact with Officer C.W. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count One, 18 U.S.C. § 231(a)(3), Civil Disorder.

f.  Sixth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon, that is, a pipe.

IV.  **Count Four: Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

The parties agree that Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(1) and (b)(1)(A), requires the following elements:

a.  First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

b.  Second, the defendant did so knowingly.

c.  Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense, that is, a pipe.

**V.     Count Five: Disorderly And Disruptive Conduct in a Restricted Building or Ground with a Deadly or Dangerous Weapon**

The parties agree that Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(2) and (b)(1)(A), requires the following elements:

    a.  First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

    b.  Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

    c.  Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

    d.  Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense, that is, a pipe.

**VI.    Count Six: Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

The parties agree that Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(4) and (b)(1)(A), requires the following elements:

    a.  First, the defendant engaged in an act of physical violence against a person or property in, or in proximity to, a restricted building or grounds.

    b.  Second, the defendant did so knowingly.

    c.  Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense, that is, a pipe.

VII.   **Count Seven: Disorderly and Disruptive Conduct in a Capitol Building or Grounds, 40 U.S.C. § 5104(e)(2)(D)**

The parties agree that Disorderly and Disruptive Conduct in a Capitol Building or Grounds, 40 U.S.C. § 5104(e)(2)(D), requires the following elements:

    a.   First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

    b.   Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

    c.   Third, the defendant acted willfully and knowingly.

VIII.   **Count Eight: Act of Physical Violence in the Capitol Grounds or Buildings**

The parties agree that Act of Physical Violence in the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(F), requires the following elements:

    a.   First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

    b.   Second, the defendant acted willfully and knowingly

**Summary of Government Witness Testimony/Evidence**

The government intends to call at least the following witnesses, and seek admission of the following exhibits, to provide evidence beyond a reasonable doubt that the defendant committed the charged offenses. The parties have agreed to a set of stipulated facts as attached. The government seeks to admit all of the exhibits in the exhibit list attached. The parties have stipulated to the authenticity of all of the exhibits in the government's exhibit list. Below is additional information on the likely testimony from each witness.

**Former Metropolitan Police Officer Carlton Wilhoit** is the victim named in the indictment and will provide testimony as the officer who was directly impacted by Wilson's actions in the tunnel. Specifically, he will testify to being almost hit with a PVC pipe. Also, the witness will likely testify that during his time at the Capitol on January 6, 2021, he was equipped with a Body Worn Camera (Government's Exhibit 4) that captured the events as he experienced them. The government will seek the admission of this footage as well as footage from Officer William Bogner's Body Worn Camera (Government's Exhibit 5) who was next to him as these events unfolded. Both videos depict a concerted effort for rioters to push past the officers lining the entrance. During this push, this witness's camera and Officer Bogner's camera capture Wilson jabbing the PVC pipe towards the heads of multiple officers.

**Former United States Capitol Police Aquilino Gonell** will provide ground level testimony as one of the many officers within the tunnel during Wilson's actions.

**FBI Special Agent Cris Lester** will likely testify as a rebuttal witness to the defense case, if any. He will likely testify that as part of his investigation, on behalf of the Federal Bureau of Investigation, he conducted a proffer interview with the defendant regarding his conduct on January 6, 2021. He will likely testify to the substance of that interview.

**Anticipated Legal Issues**

Through extensive discussions with opposing counsel regarding the trial, as well as potential resolutions short of trial, the government believes there is one overarching legal issue that will be presented to this Court during trial: does the PVC pipe used by Wilson to assault officers constitute a "dangerous weapon" under 18 U.S.C. §§ 111(a) and (b).

As this Court knows, a "deadly or dangerous weapon" can be defined in one of two ways. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or

deadly. Such inherently dangerous weapons include guns, knives, and the like. The second definition is the focus of this case. An object is a deadly or dangerous weapon if the object is *capable* of causing serious bodily injury or death to another person and the defendant *used* it in that manner. *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) ("For an object that is not inherently deadly . . . the following additional element is required: (4) the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner."). In *United States v. Easterday*, Chief Judge Boasberg rejected a narrower interpretation of deadly and dangerous weapon that would require more than mere capability or possibility of harm, but rather a significant risk of harm. 2024 WL 1513527 at 12 (D.D.C. April 8, 2024). Other courts agree that almost anything can be a deadly or dangerous weapon if used in a violent fashion. *See, e.g.*, *United States v. Sanchez*, 914 F.2d 1355, 1359 (9th Cir. 1990) (citing cases involving "mop handle" and "mouth and teeth"); *Loman*, 551 F.2d at 169 (citing cases involving "a wine bottle," "shoes," "a rake," and "a chair leg").

An object does not lose its capacity to cause harm in the manner of its use, and therefore cease to be a dangerous weapon, when it is used to attack a victim wearing protective gear. When interpreting Section 111(b), courts have focused on the defendant's use of the object, not on its impact or effect on the victim; "the object's latent capability . . . coupled with the manner of its use, is determinative." *United States v. Loman*, 551 F.2d 164, 169 (7th Cir. 1977) (citation omitted) (walking stick that broke during assault was a dangerous weapon despite no serious injury). It makes sense to focus on the defendant's actions and the object itself when determining whether an object is capable of causing serious bodily injury or death especially since assault on a federal officer is a general intent crime. *See United States v. Feola,* 420 U.S. 671, 686 (1975) ("We hold, therefore, that in order to incur criminal liability under § 111 an actor must entertain merely the

criminal intent to do the acts therein specified."); *accord United States v. Kleinbart*, 27 F.3d 586 (D.C. Cir. 1994); *United States v. Duran*, 884 F. Supp. 566, 568 (D.D.C. March 19, 1995) (concluding that "assault on a federal officer is a general intent crime."). That is, to be found guilty under § 111, a defendant need only intend to assault, resist, oppose, impede, intimidate or interfere with the victim, not to injure or harm the victim—no matter whether the victim might be particularly vulnerable or particularly well-suited to defend himself from any resulting harm.

In *United States v. Mark Waynick*, Judge Kelly refused to consider the protective gear of the officers in determining whether a flagpole was used in a manner capable of causing serious bodily injury or death stating, "I don't think I take into account what the officers were wearing . . . I think there's plenty of instances where even officers wearing full riot gear, defendants are convicted of assaulting them with a dangerous weapon even with full riot gear on." 23-cr-175 (TJK) Tr. Transcript April 17, 2024 at 21. This holding makes good sense: shifting focus from the defendant's actions to the victim's relative preparedness would lead to absurd results and undercuts the purpose of Section 111. Surely, firing a gun at an officer who is visibly donning a bullet-proof vest would not mitigate the inherent dangerousness of the gun. The same should hold for non-inherently dangerous and deadly objects that are used as weapons. Likewise, police officers should be encouraged to wear protective gear as part of their job, especially when responding to large-scale riots with multiple violent offenders. Adopting an approach that considers law enforcement officers' protective gear when determining a blunt instrument's capacity to harm them would eviscerate Section 111's intent to protect police, since officers almost always wear some level of protective gear while on duty. That approach would be inconsistent with Congress' reasons for enacting § 111: protecting federal officials and deterring interference with their law enforcement activities. *See Arrington*, 309 F.3d at 46 ("As the Supreme Court noted in *Feola,* Congress

intended § 111 to protect federal officers to the maximum extent possible[.]" (citation omitted)); *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (§ 111 enacted to protect federal officers and federal functions); *United States v. Beckner*, 983 F.2d 1380, 1385 (6th Cir. 1993) (same); *United States v. Jim*, 865 F.2d 211, 214 (9th Cir. 1989) (same).

In *United States v. Lucas Denney*, the D.C. Circuit upheld the sentencing enhancements applied in a January 6 case regarding the use of a dangerous weapon, i.e. a PVC pipe.  *United States v. Lucas Denney*, No. 22-3084, 2024 WL 1590375 at 6 (D.C. Cir. Apr. 12, 2024). The defendant used a PVC pipe during the riot and struck an officer. Id. at 5. The district court found that:

> Even assuming Denney's primary intention was to knock the crowd-control spray from Sgt. K.K.'s hands, that would nonetheless mean Denney intended to hit Sgt. K.K.'s body with the pole with sufficient force to dislodge the weapon and thereby meant to cause him injury.

*Id.* at 5. The Circuit Court upheld the district court's decision and indicated that a PVC pipe was a dangerous weapon warranting a four-level enhancement under the sentencing guidelines. *Id.* at 6.

In this case, the evidence will show that the defendant forcibly jabbed the PVC pipe at officers and was inches away from hitting MPD Officer Wilhoit in the face and head. When the defendant jabbed at the officer with the PVC pipe, Officer Wilhoit attempted to avoid being hit with the pipe. The government intends to prove the pipe's dangerous capacity for inflicting the requisite harm.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:     */s/Nialah S. Ferrer*
        NIALAH S. FERRER
        Assistant United States Attorney
        New York Bar No. 5748462
        United States Attorney's Office
        District of Columbia
        (202) 557-1490
        nialah.ferrer@usdoj.gov

        */s/ Andrew J. Tessman*
         ANDREW J. TESSMAN
        Assistant United States Attorney
        West Virginia Bar No. 13734
        300 Virginia Street
        Charleston, WV 25301
        (304) 345-2200
        Andrew.Tessman@usdoj.gov

10