UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No.: 23-CR-351 (TNM) |
| RYAN WILSON, : | |
| : | |
| : | |
| : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Opposition to Defendant's Motion to Dismiss For Brady Violation. *See* ECF No. 39. In his motion, the defendant alleges that the government violated its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 (1963), by failing to disclose the presence and activities of government agents or informants who were allegedly present among the crowd on January 6, 2021, and who allegedly did not disclose their identities or affiliations. The defendant's arguments lack merit, and this Court should deny the motion and proceed to sentencing.

**LEGAL STANDARD**

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. *Id*. at 87. Material evidence favorable to the defendant means evidence creating a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *United States v. Williams-Davis*, 90 F.3d 490, 513-14 (D.C. Cir. 1996). There

1

is, however, no general constitutional right to discovery in a criminal case, and *Brady* did not create one. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988).

**ARGUMENT**

The defendant argues that the government violated *Brady* by failing to disclose the alleged presence of government agents or informants during the events of January 6, 2021. The defendant's motion is premised on his erroneous interpretation of a June 2023 transcript from a House Judiciary Committee hearing. *See* ECF No. 39 at 2. The defendant alleges that a high-ranking FBI official within the FBI's Washington Field Office "stated that there were 'a handful' of confidential human sources (CHSs) embedded in the crowd on January 6." *Id*. at 2-3. According to the defendant, the FBI official "denied that FBI informants or agents incited violence but acknowledged their direct participation in crowd surveillance." *Id.* at 3. The defendant then claims that these "facts" alone support an argument that the government suppressed exculpatory evidence in this case; in other words, that such "facts" show that government agents or informants "encouraged actions or escalated tensions [that] would support a defense of entrapment." *Id.* at 3-4. The defendant's argument lacks merit.

First, the defendant has distorted the FBI official's testimony. Far from testifying that CHSs were "embedded" in the crowd, the FBI official explained that – to his knowledge – no FBI sources were "proactively deployed" at the Capitol on January 6, 2021. *See* Tr. at 156, 158, ECF No. 39-1. The FBI official acknowledged that CHSs were "there" at the Capitol, however CHSs are private citizens whose personal lives are not controlled by the FBI. *See* Tr. at 158, ECF No. 39-1. As the FBI official explained, a CHS "might have just been there and then told us after the fact that they

2

went." *Id.*; *see also id.* ("WFO may have had a CHS in the crowd that was a drug CHS, violent crime CHS, that didn't tell us they were going, right . . . We're not going to stop them from doing that [protesting]".). Indeed, one CHS publicly testified in this district that he had joined the Proud Boys and went to the Capitol alongside the Proud Boys on his own volition – not at the direction of anyone from the FBI. *See United States v. Ethan Nordean*, 21-cr-175-TJK, March 29, 2023 Morning Tr., at 79-95. That CHS's testimony made clear that he had not been ordered by the FBI to go to the Capitol or to engage in any unlawful activity. Finally, on the very premise of the defendant's allegation, the FBI official was unequivocal—"none of this was orchestrated by the FBI." *See* Tr. at 185, ECF No. 39-1.

The defendant makes no attempt to meaningfully explain how evidence that government agents or informants were present among the crowd on January 6 and interacted with individuals without disclosing their identities of affiliations would be exculpatory, material, or undermine the convictions in this case. The government agrees with defendant that – had the FBI directed its agents to encourage him to engage in illegal conduct either directly or by example – this fact would be disclosable, and information about the specific government informants who so encouraged him may also be disclosable.[1] But the mere presence of individuals who may have had an affiliation

---

[1] "The so-called 'informant's privilege' is well established." *United States v. Glover*, 583 F. Supp. 2d 5, 11 (D.D.C. 2008). It recognizes the Government's right "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege exists to encourage citizens to perform their "obligation . . . to communicate their knowledge of the commission of crimes to law-enforcement officials" by "preserving anonymity." *Id.*

That privilege is not without limit. When "the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61. "The defendant bears the 'heavy burden . . . to establish that the identity of an informant is necessary to

with the government, and who may have kept that affiliation confidential, in a crowd of ten thousand persons, is neither relevant nor exculpatory. Indeed, most of the motion makes pithy, repetitive, and sweeping conclusions, without any discernable proffer as to how the existence of the mere presence of potential government agents changed whether the government proved its case beyond a reasonable doubt.

In reality, the defendant's motion appears to be a fishing expedition about confidential human sources, untethered to any particular defendants and powered by innuendo. *See* ECF No. 39, at 9 (justifying an evidentiary hearing demanding additional discovery). In fact, opposing counsel filed the same motion in a different case – *United States v. Jerry Waynick et al*, 23-cr-175-TJK – alleging the same defect. *See Waynick*, ECF No. 111. Judge Kelly denied this motion. See 23-cr-175-TJK, Minute Order on 11/26/24. Both motions utilize broad buzzwords invoking discovery and constitutional obligations, without providing any allegation of impropriety in the specific facts of each case. In its reply to the government's opposition to the motion to dismiss in *Waynick*, the defendant admitted that he "relied on broad [and] unsupported claims" regarding CHSs in his motion in this instant case. *See* 23-cr-175-TJK, ECF No. 118 at 6. While issues related to CHSs may be of interest in the public realm generally, the mere presence of CHSs at the Capitol, acting of their own volition in their personal capacity, is neither discoverable nor exculpatory.

Ignoring the speculative nature of the proffer, even if one were to assume the existence of confidential human sources, the only way such information would have been relevant (let alone

---

his defense[,]' and mere speculation about an informant's role or that an informant might prove helpful is insufficient to meet this burden." *Glover*, 583 F. Supp. 2d at 11 (*quoting United States v. Skeens*, 449 F.2d 1066, 1070 (D.C. Cir. 1971)).

exculpatory) is if it undermined the elements of the charges at issue. In other words, would the disclosure of such information yield a different outcome in this case? The answer is demonstrably no. In this case, the only relevance of the existence of CHSs in the crowd (and much less CHSs who were not proactively deployed on January 6) would be if the CHS interacted with the defendant in such a specific way that would somehow undermine the evidence of the defendant's own intent, knowledge, or conduct on the day in question. Ignoring that the defendant does not explain this nexus, the facts do not support it either. Here, the defendant and his father entered the Lower West Tunnel, one of the most violent areas of the U.S. Capitol, and joined other rioters as they pushed in a heave ho effort against police officers inside the tunnel. The defendant pushed his way further into the tunnel to front of the police line. While in the front of the tunnel, the defendant threw a water bottle at police officers. Shortly after, the defendant grabbed a PVC plastic pipe from another rioter and used it as a spear to assault officers in the tunnel. The defendant thrusted the pipe towards officers, nearly missing an officer's face and head – leaving the tunnel once he was sprayed with a chemical irritant.

Thus, the defendant committed his crimes independent of the inducement or instigation by any other person, let alone by a government agent. While he knowingly joined a riot and a mob, all of his actions were volitional and deliberate – choices made on his own accord. There is absolutely nothing in the record, in the defendant's motion, or in the accompanying exhibit to change that result, let alone remotely undercut the proof underlying each element of each crime. The defendant's claim of *Brady* is speculative at best, and the information he now claims as "explosive" is immaterial as to his guilt. For that reason, his motion fails.

Of course, this is not the first time a defendant in the context of the January 6 riot has

attempted to unmask or probe the FBI's entirely standard use of confidential human sources generally. Nor is it the first time a Court has had to opine on the legal bounds of such demands. In *United States v. William Pope*, 21-cr-128-RC, Judge Contreras addressed a similar *pro se* motion alleging government misconduct based on the existence of undercover agents or government actors at the U.S. Capitol on January 6. In one such order, the Court framed the issue: "[w]hile evidence of undercover officers instigating the riot on January 6 could—hypothetically—be helpful and material to Pope's case, Pope's motion never identifies a single individual he interacted with whom he now suspects to be an undercover actor." *See* ECF No. 239, at 11 (citing to Chief Judge Boasberg's similar conclusion in *United States v. Ryan Zink*, 21-cr-191, 2023 WL 5206143, at *3 (D.D.C. Aug. 14, 2023) (internal quotations omitted)). *See also Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (declining to extend entrapment by estoppel to a case where the defendants claimed that the police implicitly approved misbehavior by protestors, but could not show that such conduct was "affirmatively authorized" by the police). As explained by Judge Contreras, the defendant must justify the facts to support an entrapment defense, not the other way around. *See* ECF No. 239, at 12 ("Pope does not say that he himself spoke with or was induced by any undercover officer").

In that same case, Judge Contreras again denied another motion of a similar vein. As articulated by the Court, the defendant in *Pope* "further contends that individuals in the crowd at the Capitol were working undercover for the same government agencies, and that their presence at the Capitol contributed to the riot." *See* ECF No. 326, at 6 (seeking discovery to prove "entrapment by outrageous government conduct"). Again, the Court dismissed the defendant's overwrought rhetoric: "[t]he Court cannot see how the government's inaction—assuming such

inaction even actually occurred—induced Pope to act unlawfully." *Id.*

> Moreover, the Court cannot see how the alleged presence of government agents among the crowd at the riot induced Pope to violate the law. As this Court has repeated on several occasions, Pope has not provided evidence that he himself (1) knew that individuals in the crowd were government agents on January 6 or (2) that any of those alleged agents interacted with him and induced him to violate the law. Read charitably, Pope's argument appears to be that he violated the law because so many other individuals—including alleged undercover agents—were violating the law. But the fact that other individuals were violating the law does not rise to the level of inducement.

*Id.* at 7. As the Court properly concluded, the defendant was simply not entitled to the information he sought, as it was irrelevant to his own specific conduct. *Id.* at 8 ("Pope is not entitled to broad discovery about undercover government agents or the government's preparations for January 6 (or lack thereof)"). Indeed, the government is unaware of any case where the facts would support even a colorable inference of such inducement that would rise to the level of a *Brady* demand or discovery claim.

Here, the knowledge, intent, conduct, and pathway of the defendant is well-trodden ground. Throughout the pendency of this litigation, the defendant (and their respective counsel) had full view of his movements and pathways on January 6, 2021 that formed the basis of the criminal charges brought against him. No person induced him to commit their crimes, let alone some alleged undercover actor or source. The defendant cannot identify any piece of evidence suggesting a meaningful inducement to violate the law – whether by the detained rioter[2], or the female rioter

---

[2] The man with the dreadlocks and backpack – whether a 'normal' rioter or a confidential human source –took no action (or inaction) to induce a crime, let alone force Wilson to push officers, throw a water bottle at officers, or thrust a PVC pipe as if it was a spear at the heads of officers inside the Tunnel.

Indeed, it is not clear whether this man is even factually related to Wilson, and appears to be a holdover from the defendant's counsel's similarly filed motion in *Waynick*.

who kicked a construction marker in one defendant's direction. *See United States v. Slough*, 22 F. Supp. 3d 1, 5 (D.D.C. 2014) (requested evidence must bear "more than some abstract logistical relationship to the issues in this case." (internal quotation marks omitted)). Rather than identify a specific incident underlying this claim of confidential human source misbehavior, the defendant is using the FBI official's 2023 testimony to justify his request for broad discovery about confidential human sources. No confidential human source – if they existed in the right place, time, and location, *and* assuming they somehow meaningfully interacted with the defendant – caused the defendant to take the assault officers and engage in civil disorder on January 6.

The government is aware of its constitutional obligations. But the defendant's proffer is unavailing. He identifies no facts of material consequences, and his demand and sought-after relief is untethered to his crimes and the evidence at trial.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the defendant's motion to dismiss be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

BY:    */s/Nialah S. Ferrer*
       NIALAH S. FERRER
       Assistant United States Attorney
       New York Bar No. 5748462
       United States Attorney's Office
       District of Columbia
       (202) 557-1490
       nialah.ferrer@usdoj.gov

       */s/ Andrew J. Tessman*
       ANDREW J. TESSMAN
       Assistant United States Attorney
       West Virginia Bar No. 13734
       300 Virginia Street
       Charleston, WV 25301
       (304) 345-2200
       Andrew.Tessman@usdoj.gov